## JAMES W. MANDEVILLE v. MARIA S. SOLOMON.

IMPLIED TRUST.—An implied trust cannot exist in respect to a *claim* of title to land, which *claim* is without foundation.

IMPLIED TRUST AS BETWEEN COTENANTS.—If one of two tenants in common, who have the title to land in fee, buys in an outstanding *claim* of title which is void, without an agreement to purchase for the use of his cotenant, an implied trust cannot be raised in favor of his cotenant as to the void claim thus purchased.

APPEAL from the District Court, Second Judicial District, Butte County.

Plaintiff recovered judgment in the Court below, and the defendant, Maria S. Solomon, appealed.

The other facts are stated in the opinion of the Court.

*R. R. Provines*, for Appellant.

Had there been *a previous agreement* between the plaintiff and Solomon that this title should be purchased for their

mutual benefit, and that they would mutually contribute to the expense of it, or had Solomon voluntarily become the agent of the plaintiff to make the purchase for him, and received his money for that purpose, and then purchased the whole in his own name and for his own exclusive benefit, the plaintiff might have had some ground of complaint; but there is no pretence of any such thing. The only agreement of which the complaint gives the slightest intimation is an *understanding* between the grantors, Solomon and Meek, to which the plaintiff was not a party, and for which he paid no consideration whatever.

The complaint alleges that the claim of the six heirs so purchased " was only colorable, and absolutely null and void." A Court of equity will not take jurisdiction of a suit brought to compel the conveyance of a void title, or the performance of a void act; and the complaint should therefore have been dismissed. (*Wiggin* v. *The Mayor of New York*, 9 Paige, 16–24; 7 Conn. 496; 1 Cow. 734.)

The plaintiff's position here would seem to amount to about this : that where one tenant in common purchases what is claimed to be an additional interest in the common property, the purchase inures at once to the benefit of his cotenants, and that merely because they are his cotenants.

But we deny that there is any such agency, at all events *with respect to the title.* One tenant in common, as such, is not bound nor has he authority to defend the title of his cotenant. They hold by separate titles, although they may come from the same ultimate source, and are, as to title, entirely independent of each other. Neither is supposed to know, and much less is he bound to know, the state or condition of the title of his cotenant. He is not bound to know, and frequently does not and cannot know, who his cotenants are. How, then, can the relation of principal and agent, or trustee and *cestui que trust,* arise or be supposed to exist between them with relation to the title ?

It is believed that no well considered case can be found where the doctrine contended for has been applied to tenants in common merely on account of that relation, without the

superaddition of some other relation or circumstance, imposing some duty or giving rise to some confidence, the breach of which by one would work a fraud upon the other. When two agree to unite in purchasing an estate which is incumbered by a mortgage or a judgment lien, one of them would not, perhaps, be permitted secretly to buy up the incumbrance and use it as a means of oppressing the other by enforcing it against his interest; but it might be held to inure to the benefit of the other upon his paying his pro rata of the expense. But this is manifestly on the ground of the original agreement and the trust and confidence thence arising, which forbids either thus in violation of the spirit of that agreement secretly to work a fraud upon the other, and appropriate the whole fruits of the joint enterprise to himself. But no such agreement is shown in this case, nor is it shown or pretended that any secret advantage was taken.

In *VanHorn* v. *Fonda*, 5 J. Ch. 406, which is the leading American case of the class relied upon by plaintiff, the doctrine is applied to *joint devisees* in possession under an imperfect title derived from their common ancestor, so far as to hold that one of them should not affect the claim to the prejudice of the other, because of the seeming obligation arising from their joint claim and community of interest; and yet Chancellor Kent says in that case: "I will not say that one *tenant in common* may not in any case purchase an outstanding title for his own exclusive benefit."

There are other cases in which it has been applied to *joint tenants* and *coparceners*, but its application to mere tenants in common, without any agreement or confidential relation between them, is wholly indefensible upon principle.

*J. E. N. Lewis*, for Respondent.

It is contended by appellant that because it is charged that the claim of title by the six heirs of Potter "was only colorable, and absolutely null and void," that a Court of equity will not take jurisdiction of a suit brought to compel the conveyance of a void title, and quotes *Wiggin* v. *The Mayor*

*of New York,* 9 Paige, 16–24; 7 Conn. 496; and 1 Cow. 734. The authorities quoted do not sustain the position as applied to the purchase of a colorable outstanding title to real estate owned and possessed by two or more parties, under a deed purporting to convey the whole tract. It may be true that the party, by a bill to quiet title, might obtain full relief, but I do not see the justice of such a course as applied to the act of a cotenant, when he purchased in good faith, and to remove all clouds from their title.

The case was tried and decided upon the principle declared by the Court in *Smeed's Heirs* v. *Allherton,* 6 Dana. In that case the Court held that "it is a well established principle of equity, repeatedly recognized by this Court, that a tenant in common, joint tenant, or purchaser, being in possession, will not be permitted to purchase up an adversary claim and oppose it to the title of his cotenant, or hold under it in opposition to their joint claim, but such purchase, if made, will inure in equity to the joint benefit of each, upon the equitable terms of an equal contribution by each to the cost of the purchase. This principle flows out of the *privity* between them, and inculcates fidelity and good faith. (*Venable* v. *Beauchamp,* 3 Dana, 324; 5 John. Ch. 407; 4 Mon. 298; 2 John. Ch. 33.)"

We submit that since the outstanding claim of title was purchased for the mutual benefit of plaintiff and Solomon, that she is not in a condition to urge that it was purchased adversely to plaintiff. It was not important that there should have been a prior agreement.


By the Court, RHODES, J.:

It is alleged in the complaint that John Potter was the owner in fee of the half league of land therein described; that he devised the same in fee to James K. Polk Potter, one of his sons; that the title of the devisee was conveyed to John Bidwell; that Bidwell conveyed to the plaintiff and Perrin L. Solomon a portion of the half league, which is also

6

described in the complaint, whereby they became tenants in common and owners in fee of the last mentioned tract of land, together with all the estate, right and title that James K. Polk Potter held therein; that while the plaintiff and Solomon were in possession and the owners thereof as such tenants in common, the other six heirs of John Potter, deceased, "set up some claim, or pretended claim," to the half league of land, but that "their pretended claim of title and interest in said property, particularly in the last named tract, was only colorable, and absolutely null and void, as this plaintiff is informed and believes to be true;" that Solomon negotiated with the six heirs of John Potter for the purchase of all their right, title, etc., in the ·half league of land; that he procured William Meek to advance the purchase money, and take the conveyance from the heirs in his own name as security for the purchase money; that Meek conveyed the title he thus acquired to O. C. Pratt, who paid him the purchase money he had advanced; that Pratt conveyed to the defendant, Maria S. Solomon, the executrix of P. L. Solomon, deceased, the title he acquired through the deed of Meek to that portion of the half league of land which Bidwell had conveyed to the plaintiff and Solomon; that Meek and Pratt severally took their conveyances of the title · in trust for the plaintiff, Solomon and Bidwell; and the defendant, Maria S. Solomon, also took the title conveyed to her by Pratt in trust for the plaintiff as to the undivided half of the last mentioned tract, each of the grantees having full notice of the trust and the facts in relation thereto; that the plaintiff tendered to Maria S. Solomon his share of the purchase money and expenses, and demanded of her a deed as to his undivided half of the premises, which she refused. The plaintiff seeks to hold her as his trustee, and compel her to convey to him whatever interest she acquired in his undivided half of the premises through the series of conveyances, commencing with that of the six heirs of John Potter to Meek.

The defendant, Maria S. Solomon, demurred to the complaint, and the demurrer was overruled.

There is no allegation that there was any express contract

between P. L. Solomon and the plaintiff, by which Solomon undertook to purchase for the use or in trust for the plaintiff, the title or claim of the heirs of John Potter. The averments showing the capacity in which the purchase was made and the position of the plaintiff in reference to the transaction are, that by the purchase from Bidwell they became tenants in common in fee of the tract of land; that Solomon " as the tenant in common of the plaintiff" entered into a negotiation for the purchase from the heirs, etc.; that Solomon " for and in behalf of this plaintiff, and to perfect their title and to remove all clouds therefrom," purchased all the title of the heirs, etc.; that Solomon negotiated with Meek to advance the purchase money, and to secure its repayment to Meek " by an agreement and understanding with said Meek, that the said title so purchased was to be conveyed by the said heirs to the said Meek in trust by way of security for the payment of said money, and for the use and benefit of this plaintiff and the said Solomon," as to their tract of land and of Bidwell as to his tract of land, and " with that understanding" the heirs conveyed to Meek. There are other averments of a character similar to the last. No one of these averments amounts, nor do all of them combined amount to the allegation of an express contract between the plaintiff and Solomon in respect to purchase. There being no express agreement, there was no express trust between them, as to the title so purchased; and the plaintiff must rely, as he does mainly in his brief, upon the trust arising by operation or construction of law, out of the relation subsisting between the plaintiff and Solomon as tenants in common, and the fact of the purchase of an outstanding or adversary title by Solomon.

We do not here question the doctrine of *Van Horne* v. *Fonda*, 5 John. Ch. 407, which is approved by Mr. Justice Story, in *Flagg* v. *Mann*, 2 Sum. 520, and followed in *Lee & Graham* v. *Fox*, 6 Dana, 176, and very many other cases, that one tenant in common cannot purchase an outstanding title or incumbrance on the joint estate for his exclusive benefit, and use it against his cotenant, but that the purchase will inure to the benefit of the cotenant also, upon his making

contribution; and it is, perhaps, too firmly founded on well recognized and admitted principles of equity to be now doubted. But the facts presented in the complaint do not require or permit the application of this rule. Where the circumstances of a transaction are such that the person who takes the title to property cannot be permitted to hold and enjoy it, in whole or in part, without necessarily violating some principle of equity, a constructive trust will be raised for the benefit of the party entitled in equity to its beneficial enjoyment. It is because he holds the property, or some interest therein, which it is inequitable for him to enjoy, that the Court declares the trust and fastens it upon his conscience, and wrests the property or interest ʻfrom him and causes it to be transferred to the person equitably entitled to it. It is as necessary in establishing and enforcing such a trust that there should be trust property as that there should be a trustee and *cestui que trust;* and indeed the relation of trustee and *cestui que trust* cannot exist or be declared in cases of implied trust, in the absence of a subject matter to which the alleged trust relates. The plaintiff must allege that the defendant holds the title or some interest in certain property which it is inequitable for him to enjoy as against the plaintiff, for that is the subject matter of the action, and in its absence there is nothing which the Court can order to be transferred to him. Here the title in fee was not the subject of the trust, for the parties rightfully hold that as tenants in common. The only right or title that the plaintiff has attempted to specify as the trust property, is the title derived through the conveyance made by the heirs of John Potter to Meek. This is expressly shown to amount to neither a right, title nor interest in the land. The claim of the heirs is directly alleged to be void, and the same is argumentatively stated when it is alleged that the title in fee passed from John Potter, by virtue of the conveyances first mentioned, to the plaintiff and Solomon, as tenants in common. A trust in a void title cannot be enforced against the plaintiffs by the defendants. It will be of no value to the plaintiff if transferred to him, and the Court will therefore refuse to order so vain a thing as the

transfer of the undivided half of nothing.  Whether parties may not contract that one of them shall purchase, for the use of both, a claim, whether well or ill founded, is a question that does not arise here, but an implied trust cannot be raised in respect to a claim that is expressly alleged to be null and void.

Judgment reversed and the cause remanded, with directions to sustain the demurrer to the complaint.