672

Wm. F. McMurry, of Paducah, Ky., and Gordon, Laurent, Ogden & Galphin, of Louisville, Ky., for plaintiff.

W. A. Berry, of Paducah, Ky., and Davis Boehl, Viser & Marcus, of Louisville, Ky., for defendant.

MILLER, District Judge.

The defendant's motion to strike from the petition raises the question of the liability of the City National Bank to McCracken County by reason of the fraudulent transactions of Utterback, who was both President of the Bank and at the same time Treasurer of McCracken County.

The defendant, by its Bankers' Blanket Bond issued to the Bank and herein sued on, agreed "to indemnify the Insured and hold it harmless from and against any loss of money, currency * * * sustained by the Insured * * * through any dishonest act of any of the Employees, wherever committed and whether committed directly or by collusion with others." Utterback manipulated the funds of McCracken County in numerous and various ways, in which the Bank was involved. The Bank suspended business on October 28, 1931. Utterback committed suicide immediately thereafter. McCracken County made claims against the Bank, suit was instituted to enforce them, and the matter finally settled by compromise. This action is to recover for the losses so suffered by the Bank, and other losses not necessary to consider on this motion. The defendant has moved to strike the allegations pertaining to the losses above referred to on the ground they were not included within the provisions of the bond.

Defendant's contention that the bond covers only the loss of physical property, such as silver and currency in specie, and not a loss by reason of a claim by a depositor, is not well taken. The contract should be construed according to the intention of the parties to it. Johnson v. Stumbo, 277 Ky. 301, 126 S.W.2d 165; Myers Bros. v. Hager, 266 Ky. 3, 98 S.W.2d 36. The evident purpose of the parties was to protect the bank against "*any*" loss of money by reason of the dishonest acts of its employees. The payment of a legal liability caused by the dishonest act of the employee is a "loss of money" to the same practical effect as it would be if the employee actually took the money out of the till. Defend-

ant's contention that the loss was not sustained while the bond was in effect, because the actual payment was not made until after the bond expired is too technical to receive much consideration. The dishonest acts causing the ultimate payment of the liability took place while the bond was in effect. The liability was incurred at that time; the loss, when paid, relates back to the date of liability.

■ Defendant's remaining contention presents a more serious question. If the bank negotiated and paid a compromise settlement when no liability actually existed, there is no liability under the indemnity bond. American Surety Co. v. Ballman, C.C., 104 F. 634. Defendant contends there was no liability on the part of the bank to McCracken County, in that Utterback was acting as Treasurer of McCracken County and not as the President of the Bank when he did the acts in question and the Bank was not charged with notice of the fraudulent acts when it dealt with Utterback, although Utterback at the same time was acting as President of the Bank. It is settled in Kentucky that if a bank accepts a deposit of fiduciary funds in the individual account of the fiduciary, with knowledge that the funds are fiduciary funds and permits the funds thereafter to be applied to the individual's own purposes, the bank is liable to the beneficiary for the loss sustained. Taylor v. Harris' Adm'r, 164 Ky. 654, 176 S.W. 168; Farmers' & Traders' Bank of Shelbyville v. Fidelity & Deposit Co. of Md., 108 Ky. 384, 56 S.W. 671; Mitchell v. First National Bank, 203 Ky. 770, 263 S.W. 15. Under this rule and its logical extension, the Bank would be liable to McCracken County for the losses in question, if the Bank had notice or was charged with notice of Utterback's fraudulent acts, while acting both as Treasurer of McCracken County and as President of the Bank.

■ The rule is well settled that the principal is bound by the knowledge of his agent acquired in the course of the principal's business and while acting within the scope of his authority.

■ An exception to the general rule arises in case of such conduct of the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the agent acts for himself in his own interest and adversely to that of the principal. Where an officer of a bank is guilty of fraud, the bank is not as a general rule chargeable with notice of facts connected with the fraudulent transaction and which for that reason would probably have been concealed by the officer. American National Bank v. Miller, 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310; Ohio Valley Banking & Trust Co. v. Citizens' National Bank, 173 Ky. 640, 191 S.W. 433. However, where a bank officer in a particular transaction (1) alone represents the bank, or (2) the corporation benefits by the transaction, or (3) the officer of the bank is acting in the interest of the bank instead of merely dealing with the bank, the bank is chargeable with knowledge of the officer's fraud in the transaction. Schneider v. Thompson, 8 Cir., 58 F.2d 94; Bosworth v. Maryland Casualty Co., 7 Cir., 74 F.2d 519; Munroe v. Harriman et al., 2 Cir., 85 F.2d 493, 111 A.L.R. 657. Curtis, Collins and Holbrook Co. v. United States, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956. Each of these cases specifically refers to the decision in American National Bank v. Miller, supra, relied on by defendant, and holds it not applicable to the particular facts in its case. The Ohio Valley Banking & Trust Co. case, Ky., supra, recognizes the distinction.

■ In the present case the actions of Utterback, in so far as the Court is advised by the allegations before it, seem to bring the case within the rule stated by the case of Schneider v. Thompson, supra, and the others cited to the same effect, with the result that the bank is charged with notice of Utterback's fraudulent transactions which caused the loss to McCracken County. The resulting liability against the bank is covered by the bond sued on.

■ Defendant further contends that the claim of the plaintiff for court costs, expenses and attorneys fees in the amount of $37,302.22 expended by it in defending the action by McCracken County against the bank is not covered by the bond, even though the amount paid in compromise is covered by the bond. It has moved that allegations concerning this expense item be stricken from the petition. Although the bond does not specifically refer to these items of expense, yet it provides that the defendant "agrees to indemnify the Insured and hold it harmless from and against any loss, etc." These words are broad enough to include the expenses of the kind in question if incurred in good faith and in reasonable amounts. Second National Bank,

etc., **v.** United States Fidelity & Guaranty Co., 4 Cir., 266 F. 489. See statement of rule in 14 R.C.L. 59, "Indemnity" and in 31 C.J. 436, "Indemnity." The present motion does not raise any issue of good faith or excessive amounts.

The motion to strike is overruled.

The motion to make more definite is also overruled.